**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

DARRYLE CHATMAN,          )
                                  )
      **Plaintiff,**         )
                                  )
**v.**                               )
                                  )
**TROY BULLER,**         )     **Case No. 12-CV-182-JHP**
                                  )
      **Defendant.**      )

## OPINION AND ORDER

Before the Court are Defendant's Motion for Summary Judgment [Doc. No. 14]; Plaintiff's Response to Defendant's Motion for Summary Judgment [Doc. No. 15]; Defendant's Reply to Plaintiff's Response [Doc. No. 16][1]; and Plaintiff's Sur-Reply to Defendant's Response [Doc. No. 20]. After review of the briefs, and for the reasons stated below, Defendant's Motion for Summary Judgment is **DENIED** in part and **GRANTED** in part.

## BACKGROUND

On April 11, 2010, Defendant, a police officer employed by the Muskogee Police Department, was on patrol near the intersection of 15th Street and Fremont in Muskogee, Oklahoma. The City of Muskogee has an ordinance governing the manner in which pedestrians walk along the roadway. Specifically, Muskogee City Ordinance Sec. 78-652 provides that "[w]here sidewalks are not provided, any pedestrian walking along and upon a highway shall when practicable walk only on the left side of the roadway or its shoulder facing traffic which may approach from the opposite direction and shall yield to approaching vehicles." As Defendant approached the intersection in his patrol car, he observed Plaintiff walking on the

---

[1] Inadvertently titled "Defendant Troy Buller's Motion for Summary Judgment and Brief in Support."

road.[2]  As Defendant continued to travel toward the intersection, closer to Plaintiff, Plaintiff moved closer to the edge of the roadway and started to step onto the median area between the intersecting roads.  At that point, Defendant activated the overhead lights on his patrol car and honked his horn.  Plaintiff looked in the direction of Defendant's patrol car and continued walking, putting his hand in his pocket.  Defendant brought his patrol car to a stop, exited the vehicle, and immediately began shouting profanity-laced commands at Plaintiff.  Within seconds, Defendant drew his Taser and repeatedly threatened to use it on Plaintiff.[3]  In response to Defendant's commands to get down on his knees, Plaintiff responded twice by saying, "I'm not going to do nothing."  During this time, Defendant communicated to his backing officer, Officer Wilson, asking him to "step it up."  At some point prior to Officer Wilson's arrival on the scene, Defendant moved to a position in front of Defendant, in a position where he could easily see both of Plaintiff's hands.[4]  After Officer Wilson arrived, Defendant moved to a position behind Plaintiff.  As Officer Wilson communicated with Plaintiff, Defendant holstered his Taser, placed his left hand on the back of Plaintiff's neck, grabbed Plaintiff's right wrist with his right hand, and forced Plaintiff to the ground.  Plaintiff claims that after being handcuffed, Defendant continued to strike him, causing bruising all over his body, including his neck.

Plaintiff was arrested and charged with violating 21 Okla. Stat. 540 (obstruction) and 63 Okla. Stat. 2-401-B (possession of a controlled dangerous substance).  As a part of the State District Court proceedings, a preliminary hearing was held on May 10, 2010, before Muskogee County District Judge Michael Norman.  At the preliminary hearing, Plaintiff and Defendant

---

[2] A genuine factual dispute exists as to whether Plaintiff was walking along the road or across the road.

[3] Footage from Defendant's patrol car video shows the aggressive tactics utilized by Defendant from the very inception of his encounter with Plaintiff.

[4] The video reveals that Plaintiff held a brown paper bag containing a beverage in his left hand.  At the state court preliminary hearing, Plaintiff presented evidence, which, based on the record before this Court, appears to be uncontroverted, that the item in the bag was a soda can. [Doc. No. 15, Ex. 1 at 47].

presented conflicting evidence as to the circumstances surrounding Plaintiff's arrest. Significantly, the footage of the incident captured by the responding officers' patrol car video recording systems was not produced until after the preliminary hearing. At the conclusion of the hearing, Judge Norman concluded that the prosecution had met its burden and bound Plaintiff over for trial—noting the questions of fact raised by the evidence presented. Following the production of the footage of the incident, the charges against Plaintiff were dismissed by the State District Court.

## DISCUSSION

As a general rule, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is genuine if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* In making this determination, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255. Thus, the inquiry for this Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251–52.

## I. 28 U.S.C. § 1983

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which provides as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities

secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

Thus, in order to establish liability under § 1983, the Plaintiff must prove that: (1) a person; (2) subjected or caused one to be subjected to the deprivation of a federal statutory or constitutional right; (3) by someone acting "under the color of law." 42 U.S.C. § 1983. As such, it is essential for Plaintiff to prove a deprivation of a constitutional right.

In his Complaint, Plaintiff alleges that Defendant (1) violated his Fourth Amendment rights by seizing him without proper legal justification; (2) used excessive force in violation of the Fourth Amendment; and (3) violated the Fourteenth Amendment's Equal Protection Clause by targeting Plaintiff for arrest on the basis of his race. [Doc. No. 2]. The Court analyzes each of Plaintiff's claims below in order to determine whether Plaintiff has met his burden.

## II. Unlawful Seizure in Violation of the Fourth Amendment

The Fourth Amendment to the Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. "The Supreme Court has identified three types of police/citizen encounters: consensual encounters, investigative stops, and arrests." *Oliver v. Woods*, 209 F.3d 1179, 1186 (10th Cir. 2000) (citing *United States v. Cooper,* 733 F.2d 1360, 1363 (10th Cir. 1984)). An investigatory stop is legal only if the officer "has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" *United States v. Sokolow,* 490 U.S. 1, 7 (1989) (quoting *Terry v. Ohio,* 392 U.S. 1, 30 (1968)). "[A] warrantless arrest is constitutionally valid when an officer has probable cause to believe that the arrestee committed a crime." *Stearns v. Clarkson*, 615 F.3d 1278, 1282 (10th Cir. 2010) (citing *Oliver,* 209 F.3d at 1186). Plaintiff contends that

Defendant subjected him to both an unlawful investigatory detention and an unlawful warrantless arrest. [Doc. No. 15 at 5-10]. The Court addresses both of Plaintiff's contentions below.

## A. Investigative Detention

"An investigative detention, which is also referred to as a Terry stop, is a seizure within the meaning of the Fourth Amendment, but unlike an arrest, it need not be supported by probable cause." *Oliver*, 209 F.3d at 1186 (citing *Terry,* 392 U.S. 1). Instead, "the police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *Sokolow,* 490 U.S. at 7 (quoting *Terry,* 392 U.S. at 30). In order to justify this temporary detention, the detaining officer must, based on the totality of the circumstances, "have a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez,* 449 U.S. 411, 417–18 (1981).

In *United States v. Shareef*, the Tenth Circuit Court of Appeals laid out a two-prong test to determine whether an investigatory stop was reasonable: (1) "whether the officer's action was justified at its inception"; and (2) "whether it was reasonably related in scope to the circumstances which justified the interference in the first place." 100 F.3d 1493, 1500 (10th Cir. 1996) (quoting *Terry,* 392 U.S. at 20).

### 1. Officer's Action Justified at Inception

Defendant asserts that his investigatory stop of Plaintiff was justified at its inception by reasonable suspicion. Specifically, Defendant claims that he witnessed Plaintiff violate Muskogee City Ordinance Sec. 78-652, which provides the following:

**Sec. 78-652-Walking along roadway.**

(a) Where sidewalks are provided, no pedestrian shall walk along and upon an adjacent roadway.

(b) Where sidewalks are not provided, any pedestrian walking along and upon a highway shall when practicable walk only on the left side of the roadway or its shoulder facing traffic which may approach from the opposite direction and shall yield to approaching vehicles.

[Doc. No. 14, Ex. 3] (emphasis original).

To support his contention that he observed Plaintiff violate Muskogee City Ordinance Sec. 78-652, Defendant offers an affidavit describing his version of the events and footage of the incident from his patrol car video recording system. [Doc. No. 14, Ex. 1, 2]. In his affidavit, Defendant states:

3. As I was traveling southbound on 15th Street I observed a pedestrian walking southbound in the middle of the same lane I was travelling in.
…
5. The manner in which I saw the pedestrian walking in the street violated [Muskogee City Ordinance Sec. 78-652], so I continued southbound toward [Plaintiff's] location.

[Doc. No. 14, Ex. 1 at 2]. Based on what he observed, Defendant activated his overhead lights and initiated contact with Plaintiff. [*Id.*] Plaintiff disputes the basis for the stop, claiming that his conduct did not violate Muskogee City Ordinance Sec. 78-652. Plaintiff contends that he was walking *across the road* to a nearby convenience store, not *along the road*. [Doc. No. 15 at 8-9, Ex. 1 at 38].

Much of Defendant's version of events is corroborated by the footage of the events recorded by his patrol car video system. [Doc. No. 14, Ex. 2]. The video footage, however, is inconclusive as to whether Plaintiff was walking at an angle across the intersection or walking along the road. [*See* Doc. No. 14, Ex. 2]. Thus, the Court finds that there is a genuine dispute of material fact as to the justification for Plaintiff's initial investigatory detention, which must be viewed in a light most favorable to the Plaintiff. Accordingly, this issue is not suitable for summary adjudication.

## 2. *Scope of Investigatory Detention*[5]

"An investigative detention must be temporary, lasting no longer than necessary to effectuate the purpose of the stop, and the scope of the detention must be carefully tailored to its underlying justification." *United States v. Wood*, 106 F.3d 942, 945 (10th Cir. 1997) (citing *Florida v. Royer,* 460 U.S. 491, 500 (1983)). Further, "a police officer may take such steps as are reasonably necessary to protect his safety and to maintain the status quo during a detention." *Lundstrom v. Romero*, 616 F.3d 1108, 1120 (10th Cir. 2010) (citing *United States v. Garcia,* 459 F.3d 1059, 1063 (10th Cir. 2006)). But "[t]he reasonableness of Defendants' actions depends both on whether the officers were in danger at the precise moment that they used force and on whether Defendants' own reckless or deliberate conduct during the seizure unreasonably created the need to use such force." *Allen v. Muskogee, Okla.*, 119 F.3d 837, 840 (10th Cir. 1997). The Court is particularly sensitive to the aggressive tactics utilized by law enforcement officers investigating violations of minor traffic offenses.

However, to be sure, "[i]f a police-citizen encounter exceeds the limits of an investigative detention, it then becomes an arrest that must be supported by probable cause." *Id.* (citing *United States v. Rodriguez–Rodriguez,* 550 F.3d 1223, 1227 (10th Cir. 2008)). "While there is no litmus-paper test for determining when an investigative detention enters the realm of an arrest, we have stated an arrest is distinguished from an investigative detention 'by the involuntary, highly intrusive nature of the encounter.'" *Id.* (citing *Cortez,* 478 F.3d at 1115). More aggressive tactics, such as "the use of firearms, handcuffs, and other forceful techniques, for example, generally indicate an investigative detention has evolved into an arrest." *Id.* The United States

---

[5] Defendant claims that "Plaintiff has not placed the scope of the detention, or the length of the detention at issue." [Doc. No. 14 at 13]. The Court notes, however, that Plaintiff addressed the reasonableness of the investigatory detention in his response. [Doc. No. 15 at 9].

Court of Appeals for the Tenth Circuit, addressing the use of weapons in connection with an investigatory detention, explained:

> As an initial matter, the use of a gun does not in and of itself make an encounter an unlawful seizure. [T]he use of guns in connection with a stop is permissible where the police reasonably believe the weapons are necessary for their protection. [T]he pointing of firearms should[, however,] be predicated on at least a perceived risk of injury or danger to the officers or others, based upon what the officers know at that time. In determining whether the use of weapons was reasonable, we look to the totality of the circumstances as viewed from the perspective of a reasonable officer on the scene.

*Lundstrom*, 616 F.3d at 1121 (internal citations and quotation marks omitted). The Court declines to opine on the issue of when this investigatory detention matured into an arrest because, as discussed below, the disputed facts make this determination more appropriate for a jury.

Here, Defendant initiated the investigatory detention based on Plaintiff's alleged violation of a city ordinance requiring a pedestrian to walk on one side of the road. Because the Court must consider the reasonableness of Defendant's action from the perspective of a reasonable police officer in Defendant's situation, the Court first evaluates the information in Defendant's possession. In an affidavit submitted to the Court, Defendant explained, from his point of view, what happened after he activated his lights.

> 7. As I got closer to the pedestrian, which later proved to be the Plaintiff, Darryle Chatman, he moved to the edge of the roadway.

> 8. I also honked my horn to get his attention and motioned for him to stop. Although he looked at me, he continued to walk forward and away from me.

> 9. After I got out of my car I gave Plaintiff a verbal command to "stop right now!" Plaintiff ignored the command and kept walking. By this time he had moved off the street on the west side of 15th Street.

> 10. As Plaintiff walked away he put his right hand into his right pocket, then withdrew it, and placed his right hand in front of him. At that time I became concerned that he might have a weapon.

11.  I drew my Taser from its holster, pointed it towards Plaintiff as I approached him from the rear and told him to stop or I would Taser him.  Because I was in a high crime area also known for gang activity, I used street vernacular to convey the serious nature of my order in the hope Plaintiff would comply.  However, he did not.

12.  Due to my concern over his refusal to stop, and that he might have a weapon in his right hand, I next loudly ordered Plaintiff to go down to his knees.  I did this because in my past training and experience, making a suspect go to their knees takes away most of their mobility and would make for a safer approach for me from an officer standpoint.

13.  Over the next 40 seconds I gave the Plaintiff at least eight commands to get on the ground.  He refused to comply, and instead kept repeating that "I ain't gonna do nothing."  When I threatened to Taser Plaintiff he replied, "if you Tase me I'm gonna sue you."

[Doc. No. 14, Ex. 1 at 3].

However, at the State Court preliminary hearing, Defendant testified that he drew his Taser after he had dispelled his suspicion that Plaintiff had removed a weapon from his pocket.

Defendant stated the following:

When I approached him, I initiated my lights and he turned and looked over his left shoulder at me, at which time I waived for him to come back, which generally gets the subject that's walking to stop.  He on the other hand turned and continued walking and stuck his hand down towards the front of him and bladed his back to me so I could not see in front of him.  He then - - I exited my vehicle and was issuing commands to show me his hands because this time I was in fear that he be grabbing for a weapon.  He continued walking.  When he finally did, his right hand finally did come visible, I noticed that there was no weapon in it, which is when I drew my Taser and began talking to him then.

[Doc. No. 15, Ex. 1 at 19].[6]

---

[6] A review of the transcript from the State Court preliminary hearing revealed that Defendant, in a sworn affidavit submitted to the State Court, stated that he saw Plaintiff take a clear baggie filled with an off-white substance in it out of his pocket, which suggests Defendant was not unsure about whether Plaintiff had removed a weapon from his pocket.  [Doc. No. 15, Ex. 1 at 13].  The transcript also reveals that, although Defendant maintains that he submitted one clear plastic baggie with an off-white substance to the OSBI lab for analysis, the OSBI report reflects the receipt of two bags for analysis in the underlying State Court action, one containing marijuana. [*Id.* at 13-15].

The Court also thoroughly reviewed the footage of the incident submitted by the Defendant. [Doc. No. 14, Exs. 2, 5]. The video footage shows that at some point before Officer Wilson arrived at the scene to assist Defendant, Defendant moved to a position in front of Plaintiff—a position from which Defendant could clearly see Plaintiff's hands. Nevertheless, the video shows that Defendant continued to threaten Plaintiff with his Taser.

At the outset, the Court notes that Defendant utilized very aggressive tactics from the outset of his encounter with Plaintiff—particularly in light of the relatively minor offense Defendant was investigating. Plaintiff's alleged violation of Muskogee City Ordinance Sec. 78-652 is not the type of offense which posed an inherent danger to the Defendant. Nevertheless, Defendant exited his car and immediately began shouting profanity at Plaintiff and threatening to use his Taser on Plaintiff. While Defendant may have been fearful that Plaintiff had a weapon, the evidence suggests his actions were not geared toward dispelling this fear. Even if, as Defendant now contends, he feared that Plaintiff had removed a weapon from his pocket, the fear that Plaintiff had a weapon in his hand was dispelled at some point during the course of the investigatory detention; nevertheless, Defendant's aggressive behavior continued. Accordingly, the Court finds that the issue of whether Defendant's conduct was reasonable in light of the circumstances is a jury question.

## B. Unlawful Arrest

### 1. Collateral Estoppel

Defendant asserts that Plaintiff is barred by the doctrine of collateral estoppel from litigating the issue of probable cause. According to Defendant, the issue of whether there was probable cause for Plaintiff's arrest was already decided at the preliminary hearing in the

underlying state criminal proceeding. Because Plaintiff's § 1983 claim for unlawful arrest depends upon a lack of probable cause, Defendant argues that Plaintiff's claim may not proceed.

Under Oklahoma law, the doctrine of collateral estoppel provides that:

> once a court has decided an issue of fact or law necessary to its judgment, the same parties or their privies may not relitigate the issue in a suit brought upon a different claim.... It operates to bar from relitigation both correct and erroneous resolutions of jurisdictional challenges but it cannot be made binding on anyone unless the party against whom the earlier decision is interposed had "***full and fair opportunity***" to litigate the critical issue in the earlier case.

*Fent v. Okla. Natural Gas Co., a Div. of Oneok Inc.,* 898 P.2d 126, 133 (Okla. 1984) (footnotes omitted and emphasis added).

The Oklahoma Supreme Court has also explained that "[a] finding of probable cause is inherent in an order binding over a defendant for trial." *Christopher v. Circle K Convenience Stores, Inc.,* 937 P.2d 77, 79 (Okla. 1997). Therefore, in accordance with the doctrine of collateral estoppel, the Court also explained that "an order at preliminary hearing binding over the defendant for criminal trial precludes relitigation of the issue of probable cause in a subsequent civil suit for false arrest following acquittal." *Id.* at 79.

Significantly, while an order binding over a defendant for criminal trial generally precludes relitigation of the issue of probable cause, there is an "important exception to that rule: issue preclusion does not apply if a party did not have a full and fair opportunity to litigate an issue." *Id.* at 973. "[T]he doctrine of issue preclusion is flexibly applied [in Oklahoma], the focus is on whether its application would work an injustice on the party against whom estoppel is urged." *Carris v. John R. Thomas & Assocs.,* 896 P.2d 522, 529 (Okla.1995). Accordingly, the Court must undertake an examination of all of the circumstances surrounding the order binding Plaintiff over for trial in order to determine if Plaintiff received a full and fair opportunity to litigate the issue of probable cause.

While the Court does not believe Plaintiff was afforded a full and fair opportunity to litigate the issue of probable cause at his preliminary hearing, the Court need not decide the issue on these grounds because Defendant failed to produce the entire judgment roll of the state court proceedings.[7]  Plaintiff argues that Defendant's issue preclusion defense must fail because Defendant failed to produce the entire judgment roll from the state district court.  [Doc. No. 15 at 5].  The Court agrees.

Federal courts "apply Oklahoma state law to determine the preclusive effect, if any, of the [state] proceedings on [a] federal court action." *Gouskos v. Griffith*, 122 F. App'x 965, 971 (10th Cir. 2005) (citing *Pittsburg County Rural Water Dist. No. 7 v. City of McAlester,* 358 F.3d 694, 708 (10th Cir. 2005)).  In *Gouskos v. Griffith*, the United States Court of Appeals for the Tenth Circuit explained that

> [w]hen a false-arrest defendant desires to use facts from a previous suit prosecuted in a different court system for issue preclusion, Oklahoma law requires the defendant to submit a complete record of the previous case, including *all* the preliminary hearing transcripts, so that the trial court in the false-arrest case can fully review the previous record to determine the "meaning and preclusive force to be accorded [the previous court's] ruling ... by resort solely to the face of the judgment roll...."  Failure to submit the entire judgment roll "is fatal to [an] issue-preclusion defense" on summary judgment.  Summary judgment should have been denied for this reason alone.

*Id.* at 974 (emphasis original).  Therefore, Defendant bears the burden of producing the entire judgment roll.  The judgment roll, which is synonymous with the record proper, "consists of the petition, the process, the return, the pleadings subsequent thereto, the reports, verdicts, orders, judgments, and all material acts and proceedings of the court."  *Robinson v. Texhoma Limestone, Inc.*, 100 P.3d 673, 677 (Okla. 2004).  Here, Defendant submitted partial transcripts from the

---

[7] The Court is particularly concerned about the absence of footage from Defendant's patrol car video recording system at the state court preliminary hearing, because this footage later served, in part, as the basis for dismissal of the criminal charges based on lack of probable cause. [*See* Doc. No. 15, Ex. 3].  In addition, the Court finds that Plaintiff raised significant issues regarding the credibility of Defendant's version of events—specifically, inconsistencies in Defendant's sworn statements along with unexplained problems with the narcotics evidence.

state court preliminary hearing.  [Doc. No. 14, Ex. 7; Doc. No. 16, Exs. 3, 4].  Therefore, Plaintiff is not precluded from relitigating the issue of probable cause.

### 2. *Probable Cause*

"Generally, a warrantless arrest is constitutionally valid when an officer has probable cause to believe that the arrestee committed a crime." *Stearns*, 615 F.3d at 1282 (citing *Oliver,* 209 F.3d at 1186). "Probable cause exists where the facts and circumstances within an officer's knowledge and of which he had reasonably trustworthy information are sufficient to warrant a prudent man in believing that an offense has been or is being committed." *Karr v. Smith*, 774 F.2d 1029, 1031 (10th Cir. 1985) (citing *U.S. v. Miller,* 532 F.2d 1335, 1337 (10th Cir.1976)). Probable cause has been described as a "practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice." *Brinegar v. U.S.,* 338 U.S. 160, 176 (1949).  "To determine the existence of probable cause, courts look at the totality of the circumstances as set forth in the information available to the officers at the time of the arrest." *Fisher v. Wal-Mart Stores, Inc.*, 619 F.3d 811, 816 (8th Cir. 2010).

In addition, "the legality of an arrest may be established by proving that there was probable cause to believe that the plaintiff had committed a crime other than the one with which [s]he was eventually charged, provided that the crime under which the arrest is made and [the] crime for which probable cause exists are in some fashion related." *Buck v. City of Albuquerque*, 549 F.3d 1269, 1281 (10th Cir. 2008) (quoting *Gassner v. City of Garland, Tex.,* 864 F.2d 394, 398 (5th Cir. 1989) (internal quotation marks omitted)); *see also Devenpeck v. Alford,* 543 U.S. 146, 149 (2004) ("[T]he subjective reason for making the arrest need not be the criminal offense as to

which the known facts provide probable cause."); *Apodaca v. City of Albuquerque,* 443 F.3d 1286, 1289 (10th Cir. 2006) ("All that matters is whether [the officer] possessed knowledge of evidence that would provide probable cause to arrest her on *some* ground." (emphasis in original)).

Defendant argues that probable cause existed to arrest Plaintiff for three separate offenses. First, Defendant argues that probable cause existed to arrest Plaintiff for violating Muskogee City Ordinance Sec. 78-652. [Doc. No. 15 at 15]. As discussed above, there is a factual dispute as to whether Defendant observed a violation of this ordinance. This factual dispute also prevents the Court from determining whether Defendant had probable cause to believe Plaintiff violated Muskogee City Ordinance Sec. 78-652.

Second, Defendant asserts that probable cause existed to arrest Plaintiff for violating Muskogee City Ordinance Sec. 78-648, which provides the following:

**Sec. 78-648 – Crossing at right angles.**

No pedestrian shall cross a roadway at any place other than by route at right angles to the curb or by the shortest route to the opposite curb except in a crosswalk.

[Doc. No. 16, Ex. 5] (emphasis original). Defendant argues that "even if the Court adopts Plaintiff's version that he was *crossing* the street, this fact would still not preclude a finding of probable cause…." [Doc. No. 16 at 7] (emphasis original). However, as Plaintiff points out, there is no evidence to suggest that Plaintiff did not cross the street using the shortest route possible.[8] [Doc. No. 20 at 6]. Thus, viewing the evidence in a light most favorable to the Plaintiff, the issue of whether Defendant had probable cause to arrest Plaintiff for violating Muskogee City Ordinance Sec. 78-648 is not appropriate for summary judgment.

---

[8] A review of the video footage from the incident was inconclusive as to whether Plaintiff utilized the shortest route in crossing the road.

Finally, Defendant asserts that probable cause existed to arrest Plaintiff for obstruction in violation of 21 Okla. Stat. 540. [*Id.*] 21 Okla. Stat. 540 provides that "[e]very person who willfully delays or obstructs any public officer in the discharge or attempt to discharge any duty of his office, is guilty of a misdemeanor." However, Oklahoma courts recognize a limited right to resist an *unlawful arrest* under certain circumstances. *Trent v. State*, 777 P.2d 401, 403 (Okla. Crim. App. 1989) (citing *State v. Cook*, 663 P.2d 20, 21 (Okla. Crim. App. 1983)); *see also Graves v. Thomas*, 450 F.3d 1215, 1225 (10th Cir. 2006); *Brown v. City of Oklahoma City, Okla.,* 721 P.2d 1346, 1352 (Okla. Civ. App. 1986) (In light of the police officer's racist and egregious behavior in effecting the illegal seizure of the plaintiff's car and the plaintiff's arrest, the plaintiff's "defiance of and interference with the wrecker driver's molestation of her car was not excessive."); *Sandersfield v. State,* 568 P.2d 313, 315 (Okla. Crim. App. 1977) ("[T]he right to resist an unlawful arrest is limited and varies with the circumstances."); *Walters v. State,* 403 P.2d 267, 275 (Okla. Crim. App. 1965) ("The right to resist an unlawful arrest is limited and varies with the circumstances."); *Billings v. State,* 166 P. 904, 906 (Okla. Crim. App. 1917) ("If an attempted arrest be unlawful, the party sought to be arrested may use such reasonable force, proportioned to the injury attempted upon him, as is necessary to effect his escape, but no more; and he cannot do this by using, or offering to use, a deadly weapon, if he has no reason to apprehend a greater injury than a mere unlawful arrest.").  Therefore, a party cannot be found guilty for violating 21 Okla. Stat. 540 if there is insufficient legal justification, mainly, probable cause, to support the underlying arrest.

In sum, if there was no probable cause for the arrest for violation of city ordinances, then there can be no probable cause for violation of 21 Okla. Stat. 540, because one cannot be guilty of resisting an unlawful arrest.  Therefore, because there are genuine disputes of material fact as

to the lawfulness of Plaintiff's arrest for an alleged violation of the aforementioned city ordinances, the Court cannot summarily conclude there was probable cause to arrest Plaintiff for violating 21 Okla. Stat. 540.

**III. Excessive Force in Violation of the Fourth Amendment**

Excessive force claims are evaluated under the Fourth Amendment standard of objective reasonableness. *Graham v. Connor,* 490 U.S. 386, 396–97 (1989). "Because police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation, the reasonableness of the officer's belief as to the appropriate level of force should be judged from that on-scene perspective. *Saucier v. Katz,* 533 U.S. 194, 205 (2001) (internal citations and quotations omitted). The Supreme Court has held that, "where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of force to do so." *Garner,* 471 U.S. at 11.

As the Tenth Circuit noted in *Cordova v. Aragon,* 569 F.3d 1183, 1188 (10th Cir. 2009), "[t]here is no easy-to-apply legal test for whether an officer's use of force is excessive; instead, we must slosh our way through the fact-bound morass of 'reasonableness." (Internal citations omitted). In doing so, we must weigh "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Id.* Some of the factors Courts have found useful when conducting this analysis include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (citing *Weigel v. Broad,* 544 F .3d 1143, 1151–52 (10th Cir. 2008)).

Plaintiff claims that Defendant continued to strike him after Plaintiff was already handcuffed. [Doc. No. 15, Ex. 1 at 41]. Defendant asserts that no additional force was used on the Plaintiff after Defendant forced Plaintiff to the ground. [Doc. No. 14, Ex. 1]. In support of his assertion, Defendant argues that the audio and video recordings provide no evidence that force was applied to Plaintiff after he was handcuffed. [Doc. No. 16 at 10]. However, the audio and video recordings, while probative as to the force applied to Plaintiff, are not dispositive because they do not dispel Plaintiff's assertion that force was applied to him after he was handcuffed. To be sure, it is very possible that additional physical force was used on Plaintiff outside of the video camera's view, and was not picked up by the audio recording equipment. As such, accepting Plaintiff's facts as true, the Court finds that the issue of whether Defendant used force on Plaintiff after he was restrained is a matter for the jury to decide. Moreover, given the factual disputes regarding the nature of Plaintiff's alleged crime and the degree of threat posed by Plaintiff's actions, the Plaintiff's excessive force claim is not appropriate for summary adjudication.

### III. Qualified Immunity

This Court's review of summary judgment motions in the qualified immunity context differs from that applicable to review of other summary judgment motions. *Martinez v. Beggs,* 563 F.3d 1082, 1088 (10th Cir. 2009). "When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Id.* (citing *Pearson v. Callahan,* 555 U.S. 223, 232 (2009)); *see Saucier,* 533 U.S. at 201; *see also Whittier v. Kobayashi,* 581 F.3d 1304, 1307 (11th Cir. 2009). In determining whether the plaintiff has met its burden of establishing a constitutional violation that was clearly established, the Court will

construe the facts in the light most favorable to the plaintiff as the nonmoving party. *Scott v. Harris,* 550 U.S. 372, 378, 380 (2007), *see Riggins v. Goodman,* 572 F.3d 1101, 1107 (10th Cir. 2009) (noting that generally "we accept the facts as the plaintiff alleges them"). "[B]ecause at summary judgment we are beyond the pleading phase of the litigation, a plaintiff's version of the facts must find support in the record ..." *Thomson v. Salt Lake County,* 584 F.3d 1304, 1312 (10th Cir. 2009)(internal citations omitted); *see also Estate of Larsen ex rel. Sturdivan v. Murr,* 511 F.3d 1255, 1258 (10th Cir. 2008).

"In showing that the law was clearly established, the plaintiff does not have to show that the specific action at issue had been held unlawful, but the alleged unlawfulness of the defendant's conduct must be apparent in light of preexisting law." *Armijo By & Through Chavez v. Wagon Mound Pub. Sch.*, 159 F.3d 1253, 1260 (10th Cir. 1998) (citations omitted). The plaintiff bears the burden of establishing that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* Normally, "[t]he plaintiff may satisfy his or her burden by showing that there is a Supreme Court or Tenth Circuit opinion on point, or that his or her proposition is supported by the weight of authority from other courts." *Id*. However, the plaintiff is not required "to produce a factually identical case, but allow some degree of generality in factual correspondence." *Id.* Instead, courts must take a more practical approach: "The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004).

If the Plaintiff is successful in demonstrating that Defendant violated a clearly established constitutional right, then the burden shifts back to the Defendant, who must prove that "no genuine issues of material fact" exists and that the Defendant "[is] entitled to judgment as a

matter of law." *Gross v. Pirtle,* 245 F.3d 1151, 1156 (10th Cir. 2001). Therefore, the Defendant still bears the normal summary judgment burden of showing that no material facts remain in dispute that would defeat the qualified immunity defense. *See Olsen v. Layton Hills Mall,* 312 F.3d 1304, 1312 (10th Cir. 2002) citing *Farmer v. Perrill,* 288 F.3d 1254, 1259 (10th Cir. 2002). "When the record shows an unresolved dispute of historical fact relevant to this immunity analysis, a motion for summary judgment based on qualified immunity should be 'properly denied.'" *Olsen,* 312 F.3d at 1312 (citing *Salmon v. Schwarz,* 948 F.2d 1131, 1136 (10th Cir. 1991)).

In accordance with the aforementioned principles, the Court analyzes Plaintiff's unlawful investigatory detention claim, unlawful arrest claim, and excessive force claims to determine whether Plaintiff has met his burden to demonstrate that Defendant violated a clearly established constitutional right. Because the Court concluded above that genuine disputes of material facts existed with regard to all of these claims, Defendant is not entitled to qualified immunity if Plaintiff has met his burden.

### A. Unlawful Investigatory Detention Claim

The law with regard to investigatory stops is clear. As discussed above, "the police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *Sokolow,* 490 U.S. at 7 (quoting *Terry,* 392 U.S. at 30). As discussed above, Plaintiff contends that he was walking across the street in conformance with city ordinances when Defendant initiated the investigatory stop. Accepting Plaintiff's allegations as true for purposes of this analysis, the Court concludes that Plaintiff has met his burden.

Therefore, Defendant is not entitled to qualified immunity for Plaintiff's claim that Defendant violated the Fourth Amendment by initiating an unlawful investigatory stop.

### B. Unlawful Arrest Claim

The law with regard to the unlawful arrest is also clear. "Generally, a warrantless arrest is constitutionally valid when an officer has probable cause to believe that the arrestee committed a crime." *Stearns*, 615 F.3d at 1282-83 (citing *Oliver,* 209 F.3d at 1186). "When a warrantless arrest is the subject of a § 1983 action, the defendant is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to arrest or detain the plaintiff." *York v. City of Las Cruces,* 523 F.3d 1205, 1210 (10th Cir. 2008). Thus, "[e]ven law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." *Hunter v. Bryant,* 502 U.S. 224, 227 (1991) (quotations omitted). Again, Plaintiff contends that he was walking across the street in conformance with city ordinances when Defendant initiated the investigatory stop. In addition, the Court finds that, viewing the evidence in a light favorable to Plaintiff, a reasonable officer would not conclude that probable cause existed to arrest Plaintiff at the time of Plaintiff's arrest. Therefore, Defendant is not entitled to qualified immunity for Plaintiff's claim that Defendant violated the Fourth Amendment by making an unlawful arrest.

### C. Excessive Force

The Court has carefully reviewed the briefs and exhibits submitted by the parties. Based on this review, it appears a genuine dispute of material fact exists with respect to Plaintiff's claim of excessive force against Defendant. As stated above, any doubt as to the existence of a genuine issue of material fact must be resolved against the party seeking summary judgment. In

addition, the inferences drawn from the facts presented must be construed in the light most favorable to the nonmoving party. *Board of Education v. Pico,* 457 U.S. 853, 863 (1982).

In *Olsen v. Layton Hills Mall*, the United States Court of Appeals for the Tenth Circuit explained the standards a court should consider when reviewing a § 1983 claim of excessive force:

> A police officer violates an arrestee's clearly established Fourth Amendment right to be free of excessive force during an arrest if the officer's arresting actions were not " 'objectively reasonable' in light of the facts and circumstances confronting [him]." This court assesses the reasonableness of an officer's conduct "from the perspective of a reasonable officer on the scene," acknowledging that the officer may be "forced to make split-second judgments" in certain difficult circumstances. This reasonableness standard—which is "clearly established" for the purposes of § 1983 actions,—implores the court to consider factors including the alleged crime's severity, the degree of potential threat that the suspect poses to an officer's safety and to others' safety, and the suspect's efforts to resist or evade arrest. Because the reasonableness inquiry overlaps with the qualified immunity analysis, "a qualified immunity defense [is] of less value when raised in defense of an excessive force claim."

312 F.3d at 1313 (internal citations omitted).

In reviewing the parties' briefs and in construing the facts and the inferences to be drawn therefrom in Plaintiff's favor, as the court is obligated to do at this stage, the Court finds that Plaintiff's response is sufficient at this stage of the proceedings to create a triable factual dispute on the issue of excessive force. Plaintiff's version of events is markedly different from that of Defendant in several respects, and, as discussed above, the factual dispute regarding the force used on Plaintiff after he was handcuffed is not resolved by the video of the incident. The differing versions include material factual disputes concerning, for example, the degree of potential threat that Plaintiff posed to the safety of Defendant and others, as well as Plaintiff's efforts to evade arrest. This case presents significant issues regarding the believability and credibility of the parties and the witnesses which must be resolved by a jury, not the Court.

Because resolution of Defendant's claim of qualified immunity would necessarily require the Court to resolve the disputed factual issues by essentially adopting one version over the other, the Court finds that summary judgment is not proper and cannot be granted on Defendant's assertion of qualified immunity. The Tenth Circuit has held that summary judgment motions may not be granted on any excessive force claims under § 1983 for which *any* genuine issue of material fact remains—regardless of whether the potential grant would arise from qualified immunity or from a showing that the officer merely had not committed a constitutional violation. *Olsen,* 312 F.3d at 1314 (citing *Allen,* 119 F.3d at 839). "Where a disputed issue of material fact remains, that ends the matter for summary judgment." *Id.* at 1315. Thus, summary judgment on Plaintiff's § 1983 claim against Defendant for excessive force is inappropriate. *See Mustang Fuel Corp. v. Youngstown Sheet & Tube Co.,* 561 F.2d 202, 204 (10th Cir. 1977).

### III. Plaintiff's Fourteenth Amendment Claim

In its motion, Defendant asserts that he was entitled to summary judgment on Plaintiff's claim that Defendant violated his rights under the Fourteenth Amendment. In his Petition, Plaintiff asserts that "Defendant Buller targeted Plaintiff for the selective enforcement of laws based upon Plaintiff's race and not for any other legitimate reason." [Doc. No. 2, Ex. 1 at 3]. However, in Plaintiff's Response to Defendant's Motion for Summary Judgment, Plaintiff declined to oppose summary judgment on this claim. [Doc. No. 15 at 2]. Accordingly, Defendant is entitled to summary judgment as to Plaintiff's Fourteenth Amendment claim.

### CONCLUSION

After review of the briefs, and for the reasons outlined above, Defendant's Motion for Summary Judgment is **DENIED** in part and **GRANTED** in part.

**SO ORDERED** this 20th day of February  2013.

James H. Payne
United States District Judge
Eastern District of Oklahoma