IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DARRYLE CHATMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| TROY BULLER, | )   Case No. 12-CV-182-JHP |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Before the Court are Plaintiff's Motion for Attorneys' Fees, [Doc. No. 50]; Defendant's Motion for Judgment as a Matter of Law, [Doc. No. 67]; Defendant's Motion for New Trial, [Doc. No. 68]; Defendant's Motion for Remittitur, [Doc. No. 68]; and Plaintiff's Motion for Post-Judgment Discovery, [Doc. No. 57]. After review of the briefs, and for the reasons stated below, Defendant's Motion for Judgment as a Matter of Law, [Doc. No. 67]; Defendant's Motion for New Trial, [Doc. No. 68]; Defendant's Motion for Remittitur, [Doc. No. 68]; and Plaintiff's Motion for Post-Judgment Discovery, [Doc. No. 57], are **DENIED**. Further, Plaintiff's Motion for Attorneys' Fees, [Doc. No. 50], is **STRICKEN.**

**BACKGROUND**

Plaintiff commenced this action April 10, 2012, through the filing of a petition ("Complaint") in the District Court of Muskogee County, Oklahoma. In his Complaint, Plaintiff asserted claims under 42 U.S.C. § 1983 stemming from Plaintiff's arrest by Defendant on April 11, 2010. In relevant part, Plaintiff alleged that Defendant violated his Fourth Amendment rights by (1) initiating an investigatory detention of Plaintiff without reasonable suspicion; (2) arresting Plaintiff without probable cause; and (3) using excessive force in completing the arrest. [Doc.

No. 2]. The case was tried before a jury on April 10-11, 2013, after which the jury returned a verdict in favor of Plaintiff on all three counts, awarding Plaintiff nominal damages of $1.00 on the unreasonable investigatory detention claim, $20,000.00 on the unlawful or false arrest claim, and $10,000.00 on the claim for excessive force. [Doc. No. 46]. On April 22, 2013, the Court entered a judgment reflecting the jury's verdict. [Doc. No. 48].

On May 6, 2013, Plaintiff filed a Motion for Costs, [Doc. No. 49], and a Motion for Attorneys' Fees, [Doc. No. 50]. Then, on May 20, 2013, Defendant filed a Motion for Judgment as a Matter of Law, [Doc. No. 51], a Motion for New Trial, [Doc. No. 53], and a Motion for Remittitur, [Doc. No. 53]. Plaintiff subsequently filed a Motion for Post-Judgment Discovery, [Doc. No. 57]. After reviewing the parties' submissions, the Court entered an order directing the parties to re-brief Defendant's Motion for Judgment as a Matter of Law, Defendant's Motion for New Trial, and Defendant's Motion for Remittitur with proper citations to the trial transcript. [Doc. No. 63]. These motions are now fully briefed and before the Court for consideration. [Doc. Nos. 67-70].

## DISCUSSION

**I. Motion for Judgment as a Matter of Law**

Defendant argues that he is entitled to judgment as a matter of law because (1) Plaintiff failed to present evidence sufficient to support the jury's verdict that his detention and subsequent arrest were unlawful; (2) Plaintiff should have been estopped from litigating his claim for false arrest; (3) the evidence shows that the amount of force used by Defendant was reasonable under the circumstances and constitutionally permissive; and (4) Defendant was entitled to qualified immunity.

Judgment as a matter of law is appropriate where "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). Stated differently, "[a] directed verdict is justified only where the proof is all one way or so overwhelmingly preponderant in favor of the movant so as to permit no other rational conclusion." *Hinds v. Gen. Motors Corp.*, 988 F.2d 1039, 1045 (10th Cir. 1993). In considering a Rule 50 motion, the Court must draw all reasonable inferences in favor of the nonmoving party. *Wagner v. Live Nation Motor Sports, Inc.*, 586 F.3d 1237, 1244 (10th Cir. 2009). Further, where a party properly moves for judgment as a matter of law prior to the case being submitted to the jury, that party may renew the motion after the jury returns its verdict. *See* Fed. R. Civ. P. 50(b); *Atchley v. Nordam Group, Inc.*, 180 F.3d 1143, 1147-48 (10th Cir. 1999). "The renewed motion under Rule 50(b) cannot assert grounds for relief not asserted in the original [Rule 50(a)] motion." *Marshall v. Columbia Lea Reg'l Hosp.*, 474 F.3d 733, 739-40 (10th Cir. 2007).

The Court applies the same legal standard to a renewed motion under Rule 50(b) that is applied to a Rule 50(a) motion for judgment as a matter of law. *See Hysten v. Burlington N. Santa Fe Ry. Co.*, 530 F.3d 1260, 1269–70 (10th Cir. 2008). When considering a Rule 50(b) motion, the Court "will not weigh evidence, judge witness credibility, or challenge the factual conclusions of the jury." *Deters v. Equifax Credit Info. Servs., Inc.*, 202 F.3d 1262, 1268 (10th Cir. 2000).

**A.  Waiver of Issues not Presented in Defendants Rule 50(a) Motion**

As a threshold matter, the Court must identify the issues appropriate for consideration in Defendant's Rule 50(b) motion. In his response brief, Plaintiff asserts that the Court is precluded from considering certain issues Defendant failed to raise in his Rule 50(a) motion at the close of

3

Plaintiff's evidence. [Doc. No. 69, 3]. Indeed, as outlined above, the Court may not consider issues raised in Defendant's Rule 50(b) motion not previously raised in Defendant's Rule 50(a) motion. After review of the issues raised in Defendant's Rule 50(a) motion, the Court finds that Defendant failed to assert that he was entitled to judgment as a matter of law as a result of qualified immunity or collateral estoppel on the issue of probable cause.[1] [Trial Tr. vol. 1, 159-64, April 10, 2013]. Accordingly, Defendant has waived consideration of both issues—qualified immunity and collateral estoppel—by failing to first present these issues in his Rule 50(a) motion.

**B. Fourth Amendment Claims**

The remaining issues pertain to the sufficiency of the evidence presented at trial. Specifically, Defendant argues the jury's verdict was rendered against the weight of the evidence with regard to the jury's finding (1) that Defendant lacked reasonable suspicion for the investigatory detention; (2) that Defendant lacked probable cause to arrest Plaintiff; and (3) that Defendant used excessive force in arresting Plaintiff. After review of the evidence presented at trial, the Court finds that the evidence in the record supports the jury's verdict.

The Fourth Amendment to the Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. "The Supreme Court has identified three types of police/citizen encounters: consensual

---

[1] Even if Defendant had properly preserved the issue of collateral estoppel for consideration, the Court finds that Defendant would not be entitled to relief on this ground. As outlined in the Court's February 20, 2013 Opinion and Order, Defendant failed to submit the entire judgment roll of the state court proceedings for the Court's consideration, and, consequently, the Court was unable to determine the preclusive effect of the underlying state court proceedings. [Doc. No. 33, 12]. Further, the evidence presented at trial raised grave questions regarding whether Plaintiff was afforded a *full and fair* opportunity to litigate the issue of probable cause at the preliminary hearing in state court. Specifically, Plaintiff's state court counsel testified the trial judge at Plaintiff's preliminary hearing did not consider video evidence of the relevant events surrounding the arrest, and, after subsequently reviewing this video evidence, the state court dismissed the criminal charges against Plaintiff. [Trial Tr. at 48].

encounters, investigative stops, and arrests." *Oliver v. Woods*, 209 F.3d 1179, 1186 (10th Cir. 2000) (citing *United States v. Cooper*, 733 F.2d 1360, 1363 (10th Cir. 1984)).  An investigatory stop is legal only if the officer "has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'"  *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)).  "[A] warrantless arrest is constitutionally valid when an officer has probable cause to believe that the arrestee committed a crime."  *Stearns v. Clarkson*, 615 F.3d 1278, 1282 (10th Cir. 2010) (citing *Oliver*, 209 F.3d at 1186).

**1. Unlawful Investigatory Detention**

"An investigative detention, which is also referred to as a Terry stop, is a seizure within the meaning of the Fourth Amendment, but unlike an arrest, it need not be supported by probable cause."  *Oliver*, 209 F.3d at 1186 (citing *Terry*, 392 U.S. 1).  Instead, "the police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause."  *Sokolow*, 490 U.S. at 7 (quoting *Terry*, 392 U.S. at 30).  In order to justify this temporary detention, the detaining officer must, based on the totality of the circumstances, "have a particularized and objective basis for suspecting the particular person stopped of criminal activity."  *United States v. Cortez*, 449 U.S. 411, 417–18 (1981).

In *United States v. Shareef*, the Tenth Circuit Court of Appeals laid out a two-prong test to determine whether an investigatory stop was reasonable: (1) "whether the officer's action was justified at its inception"; and (2) "whether it was reasonably related in scope to the circumstances which justified the interference in the first place."  100 F.3d 1493, 1500 (10th Cir. 1996) (quoting *Terry*, 392 U.S. at 20).

Defendant argues that he had reasonable suspicion to believe Plaintiff was violating a traffic ordinance at the time he initiated the investigatory detention of Plaintiff. After carefully reviewing the trial transcript, the Court finds that the evidence presented at trial was sufficient to support the jury's finding that Defendant's investigatory detention of Plaintiff was unlawful. First, the Court thoroughly considered the video evidence presented at trial, and finds that it to be inconclusive on the issue of whether Defendant observed Plaintiff violating a Muskogee City Ordinance or any other law prior to initiating the investigatory detention of Plaintiff. In addition, Plaintiff testified that he was not acting in a manner giving rise to reasonable suspicion prior to his detention on April 11, 2010. Thus, given the evidence presented at trial, Defendant cannot demonstrate that the jury lacked a legally sufficient evidentiary basis to find Defendant's investigatory detention of Plaintiff unlawful. Accordingly, Defendant is not entitled to judgment as a matter of law on Plaintiff's unlawful investigatory detention claim.

**2. Unlawful Arrest**

"Generally, a warrantless arrest is constitutionally valid when an officer has probable cause to believe that the arrestee committed a crime." *Stearns*, 615 F.3d at 1282 (citing *Oliver*, 209 F.3d at 1186). "Probable cause exists where the facts and circumstances within an officer's knowledge and of which he had reasonably trustworthy information are sufficient to warrant a prudent man in believing that an offense has been or is being committed." *Karr v. Smith*, 774 F.2d 1029, 1031 (10th Cir. 1985) (citing *U.S. v. Miller*, 532 F.2d 1335, 1337 (10th Cir. 1976)). Probable cause has been described as a "practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice." *Brinegar v. U.S.*, 338 U.S. 160, 176

(1949). "To determine the existence of probable cause, courts look at the totality of the circumstances as set forth in the information available to the officers at the time of the arrest." *Fisher v. Wal-Mart Stores, Inc.*, 619 F.3d 811, 816 (8th Cir. 2010).

In addition, "the legality of an arrest may be established by proving that there was probable cause to believe that the plaintiff had committed a crime other than the one with which [s]he was eventually charged, provided that the crime under which the arrest is made and [the] crime for which probable cause exists are in some fashion related." *Buck v. City of Albuquerque*, 549 F.3d 1269, 1281 (10th Cir. 2008) (quoting *Gassner v. City of Garland, Tex.*, 864 F.2d 394, 398 (5th Cir. 1989) (internal quotation marks omitted)); *see also Devenpeck v. Alford*, 543 U.S. 146, 149 (2004) ("[T]he subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause."); *Apodaca v. City of Albuquerque*, 443 F.3d 1286, 1289 (10th Cir. 2006) ("All that matters is whether [the officer] possessed knowledge of evidence that would provide probable cause to arrest her on *some* ground." (emphasis in original)).

Defendant argues that he had probable cost to arrest Plaintiff for both a violation of a traffic ordinance and obstruction in violation of 21 Okla. Stat. § 540. First, for substantially the same reasons that Defendant is not entitled to relief from the jury's finding that Defendant's investigatory detention of Plaintiff was unlawful, Defendant cannot demonstrate that he is entitled for judgment as a matter of law on the issue of unlawful arrest. Specifically, the evidence presented, as outlined above, was sufficient to find that Defendant lacked reasonable suspicion that Plaintiff violated a traffic ordinance immediately prior to his detention. Therefore, the evidence is also sufficient to support the jury's finding that Defendant lacked probable cause, which is a more stringent standard, to believe Plaintiff violated a traffic ordinance.

Second, Defendant argues he is entitled to judgment as a matter of law because probable cause existed to arrest Plaintiff for obstruction in violation of 21 Okla. Stat. § 540. The jury's finding that Defendant lacked reasonable suspicion for the investigatory detention Plaintiff, along with this Court's conclusion that the evidence presented at trial was sufficient to support that finding, however, invalidates Defendant's contention regarding the existence of probable cause to arrest Plaintiff for obstruction. The Court addressed a similar argument in its February 20, 2013 Opinion and Order, [Doc. No. 33]:

> Defendant asserts that probable cause existed to arrest Plaintiff for obstruction in violation of 21 Okla. Stat. 540. [*Id.*] 21 Okla. Stat. 540 provides that "[e]very person who willfully delays or obstructs any public officer in the discharge or attempt to discharge any duty of his office, is guilty of a misdemeanor." However, Oklahoma courts recognize a limited right to resist an *unlawful arrest* under certain circumstances. *Trent v. State*, 777 P.2d 401, 403 (Okla. Crim. App. 1989) (citing *State v. Cook*, 663 P.2d 20, 21 (Okla. Crim. App. 1983)); *see also Graves v. Thomas*, 450 F.3d 1215, 1225 (10th Cir. 2006) (citing *Brown v. City of Oklahoma City, Okla.,* 721 P.2d 1346, 1352 (Okla. Civ. App. 1986) (In light of the police officer's racist and egregious behavior in effecting the illegal seizure of the plaintiff's car and the plaintiff's arrest, the plaintiff's "defiance of and interference with the wrecker driver's molestation of her car was not excessive."); *Sandersfield v. State,* 568 P.2d 313, 315 (Okla. Crim. App. 1977) ("[T]he right to resist an unlawful arrest is limited and varies with the circumstances."); *Walters v. State,* 403 P.2d 267, 275 (Okla. Crim. App. 1965) ("The right to resist an unlawful arrest is limited and varies with the circumstances."); *Billings v. State,* 166 P. 904, 906 (Okla. Crim. App. 1917) ("If an attempted arrest be unlawful, the party sought to be arrested may use such reasonable force, proportioned to the injury attempted upon him, as is necessary to effect his escape, but no more; and he cannot do this by using, or offering to use, a deadly weapon, if he has no reason to apprehend a greater injury than a mere unlawful arrest.")). Therefore, a party cannot be found guilty for violating 21 Okla. Stat. 540 if there is insufficient legal justification, mainly, probable cause, to support the underlying arrest.

[*Id.* at 15]. In sum, violations of 21 Okla. Stat. § 540 may not be premised on a citizen's refusal to submit to a seizure, be it an arrest or investigatory detention, ultimately found to be unlawful.

In this case, the jury found that Defendant lacked any legal justification for the initial investigatory stop and the subsequent arrest. Absent any legal justification for the initial investigatory stop, Plaintiff was free to disregard Defendant's subsequent commands.

8

Accordingly, Defendant is not entitled to judgment as a matter of law on the basis that probable cause existed to arrest Plaintiff for obstruction in violation of 21 Okla. Stat. § 540.

**B. Excessive Force**

Defendant asserts that he is entitled to judgment as a matter of law on the ground that there was insufficient evidence to support the jury's finding of excessive force. Defendant's primary argument is that Defendant used a reasonable amount of force in arresting Plaintiff. Defendant argument focuses on the amount of force that was reasonable to perform a lawful arrest on Plaintiff under the circumstances. This argument is unpersuasive because the jury concluded that Defendant lacked probable cause to arrest Plaintiff; consequently, any force used on Plaintiff constitutes excess force under the circumstances.

Excessive force claims are evaluated under the Fourth Amendment standard of objective reasonableness. *Graham v. Connor*, 490 U.S. 386, 396–97 (1989). "Because police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation, the reasonableness of the officer's belief as to the appropriate level of force should be judged from that on-scene perspective." *Saucier v. Katz,* 533 U.S. 194, 205 (2001) (internal citations and quotations omitted). The Supreme Court has held that, "where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of force to do so." *Tennesee v. Garner,* 471 U.S. 1, 11 (1985).

As the Tenth Circuit noted in *Cordova v. Aragon,* 569 F.3d 1183, 1188 (10th Cir. 2009), "[t]here is no easy-to-apply legal test for whether an officer's use of force is excessive; instead, [courts] must slosh [their] way through the fact-bound morass of 'reasonableness.'" (Internal citations omitted). In doing so, courts must weigh "the nature and quality of the intrusion on the

individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Id.* This analysis includes consideration of (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (citing *Weigel v. Broad*, 544 F.3d 1143, 1151–52 (10th Cir. 2008)).

Further, if it turns out that the underlying arrest was unlawful, all force, even force that would have been reasonable in the context of a lawful arrest, is excessive. *Cortez v. McCauley*, 478 F.3d 1108, 1127 (10th Cir. 2007). In *Cortez v. McCauley*, the Tenth Circuit Court of Appeals explained:

> If the plaintiff can prove that the officers lacked probable cause, he is entitled to damages for the unlawful arrest, which includes damages resulting from any force reasonably employed in effecting the arrest. If the plaintiff can prove that the officers used greater force than would have been reasonably necessary to effect a lawful arrest, he is entitled to damages resulting from that excessive force. These two inquiries are separate and independent, though the evidence may overlap.

*Id.*

The Court finds that that Defendant is not entitled to judgment as a matter of law on Plaintiff's excessive force claim. As discussed above, Defendant is not entitled to judgment as a matter of law on the issues of both reasonable suspicion for Plaintiff's investigatory detention and probable cause to arrest Plaintiff. Thus, the jury's findings that Defendant lacked any legal justification for Plaintiff's detention and subsequent arrest will not be disturbed. If Defendant lacked any legal justification for Plaintiff's seizure, then the application of any force to Plaintiff, even if it is deemed otherwise reasonable, constitutes excessive force. Evidence clearly depicting the use of force to effect Plaintiff's arrest, which included both Plaintiff and Defendant's testimony along with video evidence of Plaintiff being forced to the ground by

Defendant and Officer Wilson, was presented at trial.[2]  Accordingly, based on the evidence presented at trial, the Court finds that Defendant is not entitled to judgment as a matter of law on Plaintiff's excessive force claim.

## II.  Motion for New Trial

Federal Rule of Civil Procedure 59 provides that "[t]he Court may, on motion, grant a new trial ... for any reason for which a new trial has heretofore been granted in an action at law in federal court."  "The decision whether to grant a new trial is committed to the informed discretion of the district court."  *Ryder v. City of Topeka,* 814 F.2d 1412, 1424 (10th Cir. 1987).  Where, as here, a party's motion for a new trial is based on a court's alleged error during trial, the motion should only be granted if the "the error was prejudicial and affects the party's substantial rights," *i.e.,* if "the claimed error substantially and adversely affected the party's rights." *Henning v. Union Pacific R. Co.*, 530 F.3d 1206, 1217 (10th Cir. 2008) (citations and internal quotations omitted).

### A.  Fed. R. Evid. 609 Evidence

Defendant argues the Court erred by excluding evidence regarding Plaintiff's prior criminal history for purposes of impeaching Plaintiff's testimony.  As a threshold matter, the convictions at issue were not *crimen falsi*, and are, therefore, governed by Fed. R. Evid. 609(a)(1).  Fed. R. Evid. 609(a)(1) provides the following:

> The following rules apply to attacking a witness's character for truthfulness by evidence of a criminal conviction:
>
> **(1)** for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year, the evidence:
>
>> **(A)** must be admitted, ***subject to Rule 403***, in a civil case or in a criminal case in which the witness is not a defendant

---

[2] Because the application of any force under these circumstances is deemed excessive, the Court declines to address whether the force would be reasonable in the context of a lawful arrest.

(Emphasis added).

The Court recognized that Rule 609 generally requires such evidence to be admitted. *See United States v. Burnston*, 159 F.3d 1328, 1336 (11th Cir. 1998). Indeed,

> [t]he implicit assumption of Rule 609 is that prior felony convictions have probative value. Their probative value, however, necessarily varies with their nature and number. Evidence of a murder conviction says something far different about a witness' credibility than evidence of a conviction for a minor drug offense, although both may constitute a prior felony conviction. Furthermore, evidence of fifteen murder convictions says something different about a witness' credibility than evidence of only one such conviction. We are not certain what evidence of two convictions for theft by taking, one conviction for armed robbery, and one conviction for aggravated assault says about Garland Wilson's credibility, but we are certain that the jury should have been given the opportunity to make that decision.

*Id.* at 1336 (internal citations and footnote omitted). Furthermore, courts must generally admit evidence regarding the nature and number of witnesses' prior felony convictions. *United States v. Albers*, 93 F.3d 1469, 1479–80 (10th Cir. 1996). But these general principles are subject to the familiar balancing test set out in Rule 403.

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Fed. R. Evid. 403. Accordingly, under Rule 609(a)(1), trial courts must "consider the relative probative worth of a witness's specific offenses of conviction … in light of the factors listed under Rule 403, when determining whether to admit evidence of those convictions for impeachment purposes." *United States v. Estrada*, 430 F.3d 606, 617 (2d Cir. 2005) (Sotomayor, J.) (citing *Howell,* 285 F.3d 1263, 1270 (10th Cir. 2002) (noting that "[a]fter conducting the Rule 403 balancing, the court may determine that evidence of the conviction, or certain aspects of evidence of the conviction, are properly excluded.")).

Trial courts are afforded significant deference to "decision[s] concerning the admissibility of evidence of a felony conviction where the court has conducted such balancing" pursuant to Rule 403. *Howell*, 285 F.3d at 1269 (citing *United States v. Begay*, 144 F.3d 1336, 1338 (10th Cir. 1998) ("We ... afford substantial deference when the district court has engaged in the balancing required by Federal Rule of Evidence 609."); *United States v. Smith*, 10 F.3d 724, 727 (10th Cir. 1993) ("[W]e give considerable deference to the district court where the court has engaged in the weighing process prescribed by" Rule 609.)). Further, there is no "absolute requirement" that trial courts issue explicit findings in order to demonstrate that such a balancing has been performed. *Howell*, 285 F.3d at 1270 (quoting *United States v. Sides*, 944 F.2d 1554, 1561 (10th Cir. 1991)). As such, the Tenth Circuit Court of Appeals has explained the following:

> In addressing situations involving the balancing of probative value against prejudicial effect of felony convictions used to impeach an accused, we have held that this circuit has not adopted a requirement that trial courts make explicit findings in determining the admissibility of prior convictions. While explicit findings enable the appellate court to ensure the proper application of Rule 609, explicit findings are not an absolute requirement the nonperformance of which mandates reversal.

*Id.* (internal citations and quotations omitted); *see also Schmidt v. Medicalodges*, Inc., 350 F. App'x 235, 238 (10th Cir. 2009) (affirming district court's evidentiary ruling notwithstanding the absence of explicit findings regarding district court's decision).

At trial, Defendant sought to introduce evidence pursuant to Fed. R. Evid. 609 regarding six felony convictions from the ten years prior to his arrest by Defendant. The Court heard extensive argument and discussion from counsel regarding the admissibility of the convictions immediately prior to trial. [*See* Trial Tr. at 16-21, ln. 18-3]. That portion of the transcript details the Court's consideration of the convictions related to Fed. R. Evid. 609, argument by defense counsel, and the argument from Plaintiff's counsel that admitting the evidence would be grossly

disproportionate to the crime at issue. After a short recess, during which the Court considered the arguments of counsel, the Court reconvened and ruled that defense counsel would only be permitted to ask the Plaintiff about his status as a convicted felon.

The Court's ruling was based on a careful consideration of the circumstances of the case and the factors set out in Rule 403. Specifically, the Court determined that the significant danger that evidence of Plaintiff's prior criminal history would unfairly prejudice the jury substantially outweighed the low probative value of such evidence on the question of Plaintiff's character for truthfulness. The Court determined that the evidence regarding Plaintiff's criminal history had little probative value because the Defendant could attempt to challenge the veracity of the majority of Plaintiff's testimony through comparison to video and audio evidence.[3] [*See* Doc. No. 43, 6-7]. Furthermore, Plaintiff testified under oath regarding many of the same matters at issue in this trial during his prior criminal trial, and such testimony could be utilized to impeach Plaintiff's testimony. The Court also considered the probative value of each successive prior conviction, ultimately determining that, while there was certainly some probative value to evidence of Plaintiff's status as a convicted felon, evidence of the quantity and specific nature of each crime had diminishing probative value for purposes of impeaching Plaintiff's character for truthfulness.

The Court also determined that the danger of unfair prejudice to Plaintiff was significant given the specific circumstances of this case. One of the primary questions to be decided by the jury was whether Plaintiff was violating a city ordinance at the time of his encounter with Defendant. [*See* Doc. No. 43, 4-5]. To be sure, the risk that members of the jury, after being

---

[3] Defendant was permitted to inquire about the existence of felony convictions, [Trial Tr. at 82-83, ln. 23-7], cross-examine Plaintiff using the preliminary hearing transcript, [*Id.* at p. 79, ln. 6-16], and cross-examine Plaintiff regarding the events that unfolded on the dash camera, [*Id.*], and had an opportunity to depose Plaintiff during the discovery period.

presented with Plaintiff's entire criminal record, might conclude that Plaintiff must have been violating *some* law at the time immediately prior to his arrest was significant. Indeed, the Court found that the risk of this unfair prejudice substantially outweighed the low probative value of evidence regarding Plaintiff's prior criminal convictions. Given the circumstances outlined above, the Court found that the proper balance was to allow Defendant to inquire of Plaintiff's status as a convicted felon. Accordingly, the Court finds no error in refusing to admit certain evidence regarding Plaintiff's prior criminal convictions.

**B. Evidence of Plaintiff's Outstanding Warrants and Contempt Sentence**

Defendant argues that the Court erred when it excluded evidence that Plaintiff was sentences to 180 days of incarceration for contempt of court at the close of his state court preliminary hearing. Immediately prior to trial, the Court took up the issue of the admissibility of the contempt citation. After considering arguments on the issue, the Court took a short recess to consider the parties arguments. Ultimately, the Court found the evidence was inadmissible because Defendant failed to establish that the evidence was relevant to any issue in the case.

The test of whether proffered evidence is relevant is whether the evidence has a tendency to make the existence of a fact more or less probable than would be the case without the benefit of the evidence. *See* Fed. R. Evid. 401. Further, the evidence that is relevant is still subject to exclusion if the risk of unfair prejudice substantially outweighs the probative value of the evidence. *See* Fed. R. Evid. 403.

Defendant argues that the evidence of the contempt sentence and pay warrants should have been admitted because it was relevant to two issues in the case. First, Defendant argues that the sentence of 180 days of incarceration was relevant to Plaintiff's damages theory. Plaintiff was arrested by Defendant on April 11, 2010, and released 115 days later on August 4,

15

2010. At the time of Plaintiff's arrest, there were outstanding warrants for Plaintiff for failure to pay fines previously accessed against Plaintiff. At his preliminary hearing in state court on May 10, 2010, the state court judge sentenced Plaintiff to 180 days of incarceration at the Muskogee County Jail, where he was already being held in connection with his April 11, 2010 arrest. On August 4, 2010, however, after the state court dismissed the charges against Plaintiff relating to the April 11, 2010 arrest, Plaintiff was immediately released irrespective of the 180-day contempt sentence. Nevertheless, Defendant argues the evidence regarding the 180-day contempt sentence should have been admitted to mitigate Plaintiff's damages:

> Regardless of what happened on May 10, 2010, bound over for trial or not, Plaintiff was going to be in jail for 180 days. Therefore when Plaintiff asked to be compensated at the trial in this matter for having to spend 115 days in jail, he was able to mislead the jury about the true nature of his damages.

[Doc. No. 68, 8]. The Defendant did not, however, offer any explanation for Plaintiff's release prior to the completion of the 180-day contempt sentence. Given Plaintiff's inexplicable release, the Court was unable to conclude that Plaintiff was incarcerated from May 10, 2010, until August 4, 2010, as a result of the contempt sentence rather than the charges stemming from Plaintiff's April 11, 2010 arrest. Therefore, Defendant failed to establish that the evidence of the contempt sentence was relevant to the issue of damages, and the evidence was properly excluded.

Defendant also argues that the evidence of the pay warrants is relevant to demonstrate that Plaintiff ignored Defendants commands to stop on the day of Plaintiff's arrest. The Court finds this argument unpersuasive. Plaintiff's motivation for ignoring Defendant's command to stop is irrelevant to the issues relevant to the primary issue in this case—whether Defendant had legal justification for the investigatory detention and arrest of Plaintiff on April 11, 2010. As discussed above, if Defendant had no legal justification for initiating the involuntary contact with

Plaintiff, then Plaintiff was not required to comply with Defendant's commands. Therefore, because Defendant failed to establish that evidence of pay warrants was relevant to any issue in the case, the Court properly excluded such evidence pursuant to Fed. R. Evid. 402.

## C.  Jury Instructions

Defendant contends he is entitled to a new trial because the Court erred by refusing to instruct the jury on the crime of obstruction, which is set out in 21 Okla. Stat. § 540. Defendant argues that instructing the jury on the crime of obstruction would have provided an additional defense to Plaintiff's claim that Defendant arrested him without probable cause and contends the Court's refusal to instruct on the crime of obstruction necessitates a new trial. The Court disagrees.

When evaluating a challenge to a jury instruction, the Court need not find that the instructions as a whole are flawless, but rather "must be satisfied that, upon hearing the instructions, the jury understood the issues to be resolved and its duty to resolve them." *Townsend v. Lumbermens Mut. Cas. Co.*, 294 F.3d 1232, 1237 (10th Cir. 2002). The Court considers the instructions given as a whole to determine whether they "adequately state the law and provide the jury with an ample understanding of the issues and controlling principles of law." *United States v. Edwards*, 69 F.3d 419, 433 (10th Cir. 1995) (citing *Brown v. Wal–Mart Stores, Inc.*, 11 F.3d 1559, 1564 (10th Cir. 1993)); *see also United States v. Allen*, 603 F.3d 1202, 1213 (10th Cir. 2010) (explaining that the Tenth Circuit reviews the instructions as a whole de novo to determine whether the applicable law was correctly stated) *and Craven v. Univ. of Colorado Hosp. Auth.*, 260 F.3d 1218, 1236 (10th Cir. 2001) (noting that the instructions are to be considered in their entirety).

At the trial, Defendant failed to bring the instruction on obstruction to the Court's attention at the jury instruction conference. However, immediately prior to the Court's reading of the jury instructions, Defendant addressed the instruction during a bench conference. Defendant argues the jury should have been instructed on obstruction because it provided an additional justification for Plaintiff's arrest—probable cause to arrest for the crime of obstruction. Defendant testified that he made up his mind to arrest Plaintiff after Plaintiff ignored Defendant's commands to stop and get on the ground. [Trial Tr. at p. 143, ln. 2-5]. As such, Defendant argues that, at the point, he had probable cause to arrest Plaintiff for obstruction. However, as explained at length above, Defendant's contention is moot because the jury concluded that Defendant had no legal justification for initiating the investigatory detention of Plaintiff on April 11, 2010. Therefore, the Court did not err by refusing to instruct the jury on the crime of obstruction, and Defendant is not entitled to a new trial on this basis.

## II. Motion for Remittitur

"It is a fundamental legal principle that the determination of the quantum of damages in civil cases is a fact-finder's function." *Bennett v. Longacre*, 774 F.2d 1024, 1028 (10th Cir. 1985). Indeed, "[t]he trier of the facts, who has the first-handed opportunity to hear the testimony and to observe the demeanor of the witnesses, is clothed with a wide latitude and discretion in fixing damages, pursuant to the court's instructions, deemed proper to fairly compensate the injured party." *Id.* As such, in all but the most extreme and unusual circumstances, a jury's award of damages on a duly entered verdict should not be disturbed. *Blanke v. Alexander*, 152 F.3d 1224, 1236 (10th Cir. 1998). Consequently, the movant bears a very heavy burden in showing that remittitur is appropriate. *Murphy Oil USA, Inc. v. Wood*, 438 F.3d 1008, 1021 (10th Cir. 2006). Remittitur is appropriate only when "the jury award is so

excessive ... as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, corruption or another improper cause invaded the trial." *Id.* (quoting *Sheets v. Salt Lake County*, 45 F.3d 1383, 1390 (10th Cir. 1995), cert. denied**,** 516 U.S. 817 (1995)) (internal citations and quotations omitted).

Defendant argues the evidence presented at the trial is insufficient to support a verdict for $30,001.00. The Court analyzed both the $10,000.00 awarded to Plaintiff for compensatory damages for the excessive use of force claim[4], and the $20,000.00 award of compensatory damages for the unlawful arrest claim.[5] After careful review of the evidence in the record, the Court finds evidence sufficient to support the jury's damages award. Further, the Court does not find the jury's award of $30,001.00 extreme, excessive, or shocking given the evidence presented. Accordingly, Defendant's Motion for Remittitur must be denied.

## IV.  Plaintiff's Motion for Attorneys' Fees

Plaintiff's Motion for Attorneys' Fees does not reflect the effort and expense necessary to respond to Defendant's post-trial motions. As such, the Court finds that Plaintiff's Motion for Attorneys' Fees, [Doc. No. 50], must be stricken to be re-urged in light of Defendant's post-trial motions no later than 14 days following the entry of this order.

## CONCLUSION

After review of the briefs, and for the reasons outlined above, Defendant's Motion for Judgment as a Matter of Law, [Doc. No. 67]; Defendant's Motion for New Trial, [Doc. No. 68];

---

[4] As discussed above, because the jury found that no legal justification existed for Plaintiff's investigatory detention and subsequent arrest, all of the force used on Plaintiff is deemed excessive.

[5] As discussed above, the Court finds no error in the exclusion of evidence regarding the 180-day contempt sentence, because Defendant failed to offer any explanation for Plaintiff immediate release following the dismissal of the criminal charges against him, which strongly suggests that the contempt sentence was not responsible for Plaintiff's unlawful confinement. Based on this finding, the Court rejects Defendant's argument that the jury was erroneously prohibited from considering the contempt sentence for purposes of determining the appropriate measure of damages for Plaintiff's unlawful arrest claim.

Defendant's Motion for Remittitur, [Doc. No. 68]; and Plaintiff's Motion for Post-Judgment Discovery, [Doc. No. 57], are **DENIED**. Further, Plaintiff's Motion for Attorneys' Fees, [Doc. No. 50], is **STRICKEN.**

  IT IS SO ORDERED this 10th day of September, 2013.

_____
James H. Payne
United States District Judge
Eastern District of Oklahoma